**CHANEL, INC., Plaintiff,**

v.

**SEA HERO, et al., Defendants.**

Case No. 16–cv–60338–BLOOM/Valle

United States District Court,
S.D. Florida.

Signed 03/07/2016

Entered 03/08/2016

---

T. Raquel Rodriguez-Albizu, Virgilio Gigante, Stephen Michael Gaffigan, Stpehen M. Gaffigan, P.A., Fort Lauderdale, FL, for Plaintiff.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

BETH BLOOM, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Entry of Preliminary Injunction, ECF No. [8] ("Motion"), filed on February 23, 2016. The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised. By the instant Motion, Plaintiff Chanel, Inc. ("Plaintiff"), moves for entry of a preliminary injunction against Defendants,[1] for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

The Court held a hearing on March 7, 2016, which was attended by counsel for Plaintiff only. During the hearing, Plaintiff directed the Court to evidence supporting the Motion for Preliminary Injunction. Several days before the hearing, Plaintiff notified the Court that it had received an email inquiry from Defendant No. 22, to which it provided notice of the hearing and its right to file in answer in response to Plaintiff's claims. ECF Nos. [14], [14-1] ("You have the right to file an Answer with the Court in response to Plaintiff's claims."). Nevertheless, none of the Defendants formally responded to the Motion for Preliminary Injunction, nor did they make any appearance or filing in this case, other than the above-mentioned email, either individually or through counsel. Because Plaintiff has satisfied the requirements for the issuance of a preliminary injunction,

---

1. Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto and Does 1-10 (collectively "Defendants").

the Court grants the Motion for Preliminary Injunction.

## I. FACTUAL BACKGROUND [2]

Plaintiff is the registered owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 0,902,190 | November 10, 1970 | (Int'l Class: 14) Bracelets, Pins, and Earrings |
| | 1,501,898 | August 30, 1988 | (Int'l Class: 6) Keychains<br>(Int'l Class: 14) Costume jewelry<br>(Int'l Class: 16) Gift wrapping paper<br>(Int'l Class: 25) Blouses, shoes, belts, scarves, jackets, men's ties<br>(Int'l Class: 26) Brooches, buttons for clothing |
| CHANEL | 3,890,159 | December 14, 2010 | (Int'l Class: 9) Cases for telephones<br>(Int'l Class: 16) Temporary tattoos<br>(Int'l Class: 18) Key cases |

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| | 4,074,269 | December 20, 2011 | (Int'l Class: 9) Protective covers for portable electronic devices, handheld digital devices, personal computers and cell phones<br>(Int'l Class: 16) Temporary tattoos<br>(Int'l Class: 18) Key cases |

*See* Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶ 4. The Chanel Marks are used in connection with the manufacture and distribution of high quality goods in the categories identified above. *See id.* at ¶¶ 4-5.

Defendants, through Internet based e-commerce stores via an Internet marketplace website, under their seller identification names identified on Schedule "A" hereto (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods

---

2. The factual background is taken from Plaintiff's Complaint, ECF No. [1], Plaintiff's Motion for Preliminary Injunction ECF No. [8], and supporting evidentiary submissions. Plaintiff filed declarations and exhibits annexed thereto in support of its Motion for Preliminary Injunction. The declarations are available in the docket at the following entries: Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1], Declaration of Virgilio Gigante, ECF No. [8-3], and Declaration of Eric Rosaler, ECF No. [8-5].

bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Chanel Marks. *See* Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶¶ 9, 11-15; *see also* Declaration of Virgilio Gigante, ECF No. [8-3] at ¶¶ 2-3; Declaration of Eric Rosaler, ECF No. [8-5] at ¶ 4.

Although each Defendant may not copy and infringe each Chanel Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the Chanel Marks. *See* Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶¶ 9, 11-15. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Chanel Marks. *See id.* at ¶¶ 9, 13, 15.

Counsel for Plaintiff retained Eric Rosaler ("Rosaler"), an officer of AED Investigations, Inc., a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing Chanel branded products by Defendants. *See* Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶ 10; Declaration of Virgilio Gigante, ECF No. [8-3] at ¶ 3; Declaration of Eric Rosaler, ECF No. [8-5] at ¶ 3. Through Amazon.com, Mr. Rosaler's firm accessed all of Defendants' Internet based e-commerce stores operating under their respective Seller IDs, and upon accessing each e-commerce store, Mr. Rosaler's firm was able to view products bearing Plaintiff's trademarks, add products to the on-line shopping cart, and proceed to a point of checkout. *See* Declaration of Eric Rosal-er, ECF No. [8-5] at ¶ 4. Mr. Rosaler's firm finalized the purchase of a product bearing counterfeits of, at least, one of the Chanel Marks at issue in this action, via each Seller ID, to be shipped to Mr. Rosaler's firm's address in the Southern District of Florida. *Id.* Each purchase was processed entirely online and at the conclusion of the process, the detailed web page captures reflecting various Chanel branded products Mr. Rosaler's firm purchased via each Defendant's Seller ID, were sent to Plaintiff's representative for inspection. *Id.*; *see also* Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶ 11; Declaration of Virgilio Gigante, ECF No. [8-3] at ¶ 3.

Additionally, Plaintiff's counsel's firm accessed the Internet based e-commerce stores operating under the Seller IDs, and captured relevant web pages illustrating examples of some of Defendants' infringement of Plaintiff's trademarks at issue via their respective Seller IDs, as well as web pages identifying various foreign countries as the shipping origins for the e-commerce stores operating under each of the Seller IDs, and provided copies of those web page captures [3] to Plaintiff's representative for inspection. *See* Declaration of Virgilio Gigante, ECF No. [8-3] at ¶ 2, n.1; Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶¶ 13-14, n.1.

Plaintiff's representative conducted a review of and visually inspected Defendants' e-commerce stores operating under the Seller IDs, together with all of the items bearing the Chanel Marks offered for sale by Defendants thereunder, including the

---

3. Some of the printouts reflecting samples of the e-commerce stores operating under the Seller IDs that were captured by Plaintiff's counsel's office and provided to Plaintiff thereafter, were obtained and downloaded using GenuNet Internet Monitoring. True and correct copies of those printouts are en-compassed, respectively, in Composite Exhibit A to the Declaration of Eric Rosaler and Composite Exhibit A to the Declaration of Adrienne Hahn Sisbarro. *See* Declaration of Virgilio Gigante, ECF No. [8-3] at ¶ 2, n.1; Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶ 14.

detailed web page captures of the Chanel branded goods identified and captured by both Mr. Rosaler's firm and Plaintiff's counsel's office, and provided to Plaintiff thereafter, and determined the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶¶ 12-15.[4]

On February 22, 2016, Plaintiff filed its Complaint, ECF No. [1], against Defendants for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. On February 23, 2016, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [8]. On February 25, 2016, this Court entered a sealed Temporary Restraining Order, ECF No. [9], enjoining Defendants from, among other actions, continuing to manufacture, promote, and/or sell any products bearing Plaintiff's alleged infringed trademarks. The Temporary Restraining Order also directed Amazon Payments, Inc. ("Amazon") to identify and restrain funds in payment accounts associated with Defendants and to transfer divert those funds to a holding account. Pursuant to the February 25, 2016 Order, Plaintiff served Defendants with a copy of the Complaint together with copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets and the Court's February 25, 2016 Temporary Restraining Order, thereby providing notice and copies of the February 25, 2016 Temporary Restraining Order and Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order,

Preliminary Injunction, and Order Restraining Transfer of Assets via e-mail to each Defendant's corresponding e-mail/online contact form, and by posting copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at http://servingnotice.com/cg14an/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant, ECF Nos. [12] and [13].

## II. LEGAL STANDARD

■ To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## III. ANALYSIS

■ The declarations Plaintiff submitted in support of its Motion for Preliminary Injunction support the following conclusions of law:

A. Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the Chanel Marks, and that the products Defendants are selling and promoting for

---

4. The printouts illustrating examples of Defendants' infringement of each Chanel Mark at issue in this action were downloaded by both Mr. Rosaler's firm and Plaintiff's counsel's office, and provided to Plaintiff thereafter. *See* Declaration of Adrienne Hahn Sisbarro, ECF No. [8-1] at ¶ 14; Declaration of Virgilio Gigante, ECF No. [8-3] at ¶ 2.

sale are copies of Plaintiff's products that bear copies of the Chanel Marks.

B. Because of the infringement of the Chanel Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Motion for Preliminary Injunction, and accompanying declarations on file, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers because it is more likely true than not that:

1. Defendants own or control Internet based e-commerce stores via, at least, one Internet marketplace website operating under their Seller IDs which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights; and

2. There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued; and

D. The public interest favors issuance of the preliminary injunction in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

E. Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of the Chanel Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits ... is an equitable remedy subject to the principles of equity.' ")).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV. CONCLUSION

Accordingly, after due consideration, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction, **ECF No. [8]**, is **GRANTED** as follows:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined, until further Order of this Court:

a. From manufacturing, importing, advertising, promoting; offering to sell, selling, distributing, or transferring any products bearing the Chanel Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Chanel Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Chanel Marks, or any confusingly similar trademarks.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Chanel Marks or any confusingly similar trademarks, on or in connection with all Internet based e-commerce store website businesses operated or controlled by them including the Internet based e-commerce stores operating under the Seller IDs;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Chanel Marks, or any confusingly similar trademarks within metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce store website businesses registered by, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs;

(4) Each Defendant shall not transfer ownership of the Internet based e-commerce store website businesses under their Seller IDs during the pendency of this Action, or until further Order of the Court;

(5) Each Defendant shall preserve, and continue to preserve, copies of all computer files relating to the use of any of the Internet based e-commerce store website businesses under their Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Internet based e-commerce stores under their Seller IDs that may have been deleted before the entry of this Order;

(6) Upon receipt of notice of this Order, Amazon Payments, Inc. ("Amazon"),[5] and its related companies and affiliates shall, to the extent not already done, immediately identify and restrain all funds, as opposed to ongoing account activity, in or which hereafter are transmitted into the Amazon accounts related to Defendants as identified on Schedule "A" hereto, as well as all funds in or which are transmitted into (i) any other accounts of the same customer(s), (ii) any other accounts which transfer funds into the same financial institution account(s), or any of the other Amazon accounts subject to this Order; and (iii)

**5.** Amazon is licensed to do business in the State of Florida by the Florida Office of the Controller and is therefore subject to personal jurisdiction in this Court. *See* Declaration of Virgilio Gigante, ECF No. [8-3] at ¶ 8.

any other Amazon accounts tied to or used by any of the Seller IDs identified on Schedule "A" hereto;

(7) Amazon shall also, to the extent not already done, immediately divert to a holding account for the trust of the Court all funds in all Amazon accounts related to Defendants identified on Schedule "A" hereto, and associated payment accounts, and any other accounts of the same customer(s) as well as any other accounts which transfer funds into the same financial institution account(s) as any of the other Amazon accounts subject to this Order;

(8) Amazon shall further, to the extent not already done, within five business days of receiving this Order, provide Plaintiff's counsel with all data which details (i) an accounting of the total funds restrained and identifies the financial account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by Amazon for any purpose (other than pursuant to a chargeback made pursuant to Amazon's security interest in the funds) without the express authorization of this Court;

(9) This Order shall apply to the Seller IDs, associated e-commerce stores, and any other seller identification names, e-commerce stores, or Amazon accounts which are being used by Defendants for the purpose of counterfeiting the Chanel Marks at issue in this action and/or unfairly competing with Plaintiff;

(10) Amazon or any Defendant or financial institution account holder may petition the Court to modify the asset restraint set out in this Order;

(11) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

(12) This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

(13) The Clerk is **DIRECTED TO UNSEAL** all docket entries in this case.

**DONE AND ORDERED** in Miami, Florida, this 7th day of March, 2016.

SCHEDULE "A"

**DEFENDANTS BY NUMBER AND SELLER IDS**

| Defendant Number | Seller ID | Amazon Seller ID | Chanel Branded Item's ASIN |
|---|---|---|---|
| 1 | sea hero | AJE6YI2L4WGIR | B015WUHHTY |
| 2 | ADRIAN STEVEN | A2S5NASRCW0P4D | B015WVJAL6 |
| 3 | BerryArt | A1SDK4LKKCXDOC | B014A0IZP2 |
| 4 | Caitian Nan | A22GEO0EM7N34M | B018HAQ74M |
| 5 | Choi Chi | A1JV3IIHAOQCAI | B0169VLCVY |
| 6 | Christmas Gift-bringer | A230T16LICO7G6 | B015QVJARQ |
| 7 | Cloud letter | A3LTO7BBKSLMYU | B014A0JWSG |
| 8 | count case card | A38RCGOHNMGA5Z | B015FHWCAI |
| 9 | Crystalline Swarovski | A62AQT465ZLXX | 9548372304 |
| 10 | dssuangyauhng | A4V7WYA3DDPOV | B014A0IZP2 |
| 11 | Emily Top Shop | A1MIVAV1E20U07 | B011BA10OM |
| 12 | gotecase | A3HV64LPF097L6 | B015FHWCAI |
| 13 | GozTech | A32C15L8PPQDGP | B018HWIIH4 |
| 14 | JIRI DOLIHAL | A12YM2IX6391QI | B015FHWCAI |
| 15 | kaamart store | A4ZPLO0SEEXPD | B011B9ZAU8 |
| 16 | liu dehua | A16ZQ0ABOF0IDZ | B0125MHCM4 |
| 17 | meilou | A2K0MNSDHNJK3S | B015WQ4V7E |
| 18 | NUYTY DESIGN | AFZQDOWKIALF6 | B00V2UP9J4 |
| 19 | OBAY | A2SB0EQVBFV07 | B00V2UP9J4 |
| 20 | Peyoneer | AB3XH0PT5F8F7 | B00XOXFTH4 |
| 21 | Sunnyhills | A1KOZCBIVU0G8G | B019LK0DB0 |
| 22 | Tcil | AKMCHKD50S4HD | B0179BOPN0 |
| 23 | VITAGARDEN | A253CY8O6NTD8M | B014HD6L3A |
| 24 | YOU WANT | A6G2TAYRAUE2W | B015FHWFUK |